James S. Lowrie (USB #2007)
George W. Pratt (USB #2642)
Jessica P. Wilde (USB #11801)
JONES WALDO HOLBROOK & McDONOUGH PC
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
Telephone: (801) 521-3200
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GLOBAL FREIGHT SYSTEMS CO. W.L.L.; GAMA CENTER; and GENOA PLASTIC INDUSTRIES,<br><br>                    Plaintiffs,<br><br>vs.<br><br>AL-MORRELL DEVELOPMENT, L.L.C. and PAUL A. MORRELL,<br><br>                    Defendants. | **COMPLAINT**<br><br>Case No. 1:14-cv-00133-TC<br><br>Honorable Tena Campbell |

Plaintiffs Global Freight Systems Co. W.L.L., Gama Center, and Genoa Plastic Industries complain of defendants Al-Morrell Development, L.L.C. and Paul A. Morrell, and allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Global Freight Systems Co. W.L.L. ("**Global Freight**") is a limited liability company organized under the laws of Kuwait, with its principal place of business in Kuwait.

2.      Plaintiff Gama Center ("**Gama**"), a branch of Bimad General Trading and Contracting Co., is a limited liability company organized under the laws of Kuwait, with its principal place of business in Kuwait.

3.      Plaintiff Genoa Plastic Industries ("**Genoa**") is a limited liability company organized under the laws of Kuwait, with its principal place of business in Kuwait.

4.      Defendant Al-Morrell Development, L.L.C. ("**AMD**") is a limited liability company organized under the laws of the state of Utah, with its principal place of business in the state of Utah.

5.      Defendant Paul A. Morrell is an individual residing, on information and belief, in Cache County, State of Utah.

6.      The matter in controversy in this action exceeds, exclusive of interest and costs, the sum of $75,000.

7.      Complete diversity exists in this case under 28 U.S.C. § 1332(a), because the citizenship of all of the plaintiffs is different than the citizenship of all of the defendants.

8.      Venue in this Court is proper under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

9.      During the recent Iraq war, Utah-based AMD served as a contractor for the United States government to build and operate water-bottling plants for the U.S. military and the commercial market within Iraq.

10.     Mr. Morrell is the managing member of AMD.

11.     On information and belief, Mr. Morrell is the sole member of AMD.

12.     Mr. Morrell has been involved in many business ventures over the years.

1169728.5

13.     Mr. Morrell has been noted as an "entrepreneur of the year" in Utah, in connection with the AMD business.

14.     On June 19, 2011, the Deseret News published an article about Mr. Morrell entitled "Entrepreneur Of The Year finalist:  Paul Morrell, Al-Morrell Development."  The article discussed one of his former successful businesses, which provided event facilities (housing, recreation facilities, and dining halls) during the Winter Olympics of 2002, held in Salt Lake City, Utah.

15.     Mr. Morrell is also praised in the article for his "Bluffdale-based Al-Morrell Development" business of bottling water at plants located in Iraq for the benefit of the U.S. military:

> The company also is always looking for new opportunities — witness AMD's recent decision to use those Iraqi water-bottling plants to bottle water for the private market in Iraq. To make sure that initiative succeeded, Al-Morrell invested in several hundred route vehicles, as well as a large distribution network with several warehouses. Private water sales have doubled each month since sales began in fall 2010, and the company is expecting sales of more than 200 million bottles this year.

16.     Global Freight, Gama, and Genoa (the "**Plaintiffs**") are companies located in Kuwait.  Each of these companies has done business with Mr. Morrell.

17.     Plaintiffs relied on AMD's reputation when it contracted with AMD.

18.     As described in greater detail below, Plaintiffs contracted with AMD to provide services and/or products to AMD, and during 2011 and 2012 each of the Plaintiffs provided the services and products to AMD pursuant to their respective agreements.

19.     As described below, AMD has failed to pay for the services and products Plaintiffs provided to AMD.

3

20.     Instead, AMD formulated and executed a plan to contract debts with Plaintiffs, and avoid paying Plaintiffs the amount owed to them under their respective agreements by transferring AMD's assets, in an effort to put them outside the reach of its creditors, including Plaintiffs.

21.     On information and belief, to carry out its plan, on or about November 16, 2011 Mr. Morrell of AMD caused the formation of Bright Pearl for Water Purification and Filling Ltd. ("**Bright Pearl**") in Iraq.

22.     On information and belief, Bright Pearl is an Iraq corporation.

23.     According to papers filed with the Iraq Chambers of Commerce, Mr. Morrell is a founding member of Bright Pearl.

24.     Further, on information and belief, Mr. Morrell's brother, Phil Morrell, controls Bright Pearl through his company, Morrell International, L.L.C. ("**Morrell International**"), a Utah limited liability company.

25.     On information and belief, AMD is a subsidiary or affiliate of Morrell International.

26.     According to Articles of Organization filed with the Utah Department of Commerce, the managing member of Morrell International is Phil Morrell.  On information and belief, Phil Morrell has a membership interest in Morrell International.

27.     According to its website, Morrell International built water bottling plants in Iraq and continues to operate the "Pearl Purified Water division":

> In 2005 and 2006, Morrell International built six state-of-the-art water bottling plants on U.S. bases across Iraq, completing each plan in an average of just 90 days.  Morrell International continues to operate the facilities through its Pearl Purified Water division, the exclusive supplier to the U.S. military in Iraq.

4

28.     On the website, Phil Morrell is listed as the founder and chairman of the board of Morrell International.  The website further discusses Phil Morrell's accomplishments, including that his company, Morrell International, was the "sole bottled water supplier" to the military in Iraq:

> A self-described "possibility thinker," Phil won and fulfilled contracts to build and operate eight military dining facilities in Iraq, providing up to 100,000 meals per day to US troops.  In addition, his company has been the sole bottled water supplier to the US military in Iraq since 2005, building and operating a network of seven water bottling plants across Iraq.

29.     Similar to AMD, Morrell International also touts itself as having provided housing and food services during the 2002 Olympic Winter Games, held in Salt Lake City. Based on the foregoing, AMD's and Morrell International's business ventures are largely the same and, at the very least, they overlap.

30.     After Global Freight had not received payment from AMD for quite some time, on December 10, 2012, its attorney demanded payment for services provided to AMD.  In response, Mr. Morrell informed Global Freight that all of AMD's assets and liabilities had been transferred to Bright Pearl.

31.     Specifically, in response to a December 10, 2012 email from Global Freight's attorney, Mr. Morrell emailed Global Freight's attorney on December 10, 2012 and stated:

> Al Morrell Development (AMD) sold all of her assets and her liabilities to Bright Pearl (BP) as of 1/1/12.  AMD currently has no assets, income or operations so suing her is going to be a waste of your time and money.  BP has enjoyed the benefit of the services provided by Global Freight and is ultimately the responsible party.  I'm sorry for the confusion but BP has not been forth coming as it should be in assuming her liabilities.

The purported transfer of AMD's assets and liabilities to Bright Pearl on January 1, 2012 is referred to hereafter as the "**Bright Pearl Transfer**."

32.     Although Genoa and Gama have now also learned of the Bright Pearl Transfer, from sources other than AMD or Mr. Morrell, prior to December 10, 2012 none of the Plaintiffs had received any notice of an assignment of rights or delegation of duties from AMD to Bright Pearl.

33.     Plaintiffs never received any notice of a delegation of duties, from AMD to Bright Pearl, nor did they ever consent to such a delegation of duties.

34.     After the Bright Pearl Transfer, AMD placed orders for products with Genoa and Gama, which were filled by Genoa and Gama, and Global Freight continued to provide services to AMD.

35.     On February 3, 2012, approximately one month after the Bright Pearl Transfer, AMD filed Articles of Amendment to Articles of Organization of Al-Morrell Development, LLC with the Utah Department of Commerce.

36.     AMD renewed its registration with the Utah Department of Commerce on July 2, 2014 and, therefore, AMD's registration is active and in good standing.

## FIRST CLAIM FOR RELIEF
(Breach of Contract—Global Freight v. AMD)

37.     Plaintiffs repeat and incorporate by reference the preceding allegations of this Complaint.

38.     On or about July 15, 2011, Global Freight and AMD entered into a Service Provider Agreement pursuant to which Global Freight was to provide transportation services to AMD for a one-year period commencing on July 15, 2011.

39.     The Service Provider Agreement required Global Freight to provide AMD with trucks, drivers and other workers, forklifts, pallets, and containers to facilitate the timely delivery

6

of supplies and equipment to support water-bottling plants located at military and civilian

locations in Iraq.  As set forth in the Service Provider Agreement, Global Freight was required to

follow a detailed set of performance guidelines.

40.     The Service Provider Agreement required AMD to pay Global Freight for the

transportation services.  The cost of the services depended on, among other things, the number of

trucks used, the distance travelled, and the type of cargo transported.

41.     Global Freight performed its obligations under the Service Provider Agreement in

a good and workmanlike manner by providing AMD with transportation services that satisfied

the detailed transportation rules and guidelines set forth in the Service Provider Agreement.

42.     AMD defaulted under the Service Provider Agreement by failing to pay amounts

owed to Global Freight for the transportation services that Global Freight provided to AMD

between October 2011 and July 15, 2012.

43.     Global Freight contacted AMD several times during 2012 to demand payment

from AMD.

44.     While AMD continually gave Global Freight excuses for non-payment and

assurances that payment would soon be made, AMD has failed and refused to pay Global Freight

what is owed under the Service Provider Agreement.

45.     The total amount owed by AMD to Global Freight is $248,675.00, plus pre-

judgment interest.

46.     Global Freight is accordingly entitled to relief as set forth in the Prayer for Relief

below.

## SECOND CLAIM FOR RELIEF
(Breach of Contract/Payment of Account—Gama v. AMD)

47.     Plaintiffs repeat and incorporate by reference the preceding allegations of this Complaint.

48.     In 2011 and 2012, Gama, a branch of Bimad General Trading and Contracting Co., agreed to sell AMD lumber and pallets that AMD would use to transport AMD's water products.

49.     Gama charged different prices for its products, depending on the sizes of lumber and the type of pallets ordered.

50.     Gama performed the contract in a good and workmanlike manner by timely supplying to AMD the lumber and pallets that AMD ordered from Gama, as specified in Invoices 86, 95, 108, 109, and 123.

51.     The products ordered by AMD were delivered on or about April 8, 2011, June 6, 2011, October 31, 2011, and March 12, 2012.

52.     AMD has failed and refused to pay Gama for the lumber and pallets.

53.     After all payments made by AMD to Gama are applied to outstanding invoices, the total amount owed by AMD to Gama is $132,700.31.

54.     Gama is also entitled to pre-judgment interest and late charges in the amount of 1.5% per month after 30 days from the due date for each invoice.

55.     Gama is accordingly entitled to relief as set forth in the Prayer for Relief below.

1169728.5

## THIRD CLAIM FOR RELIEF
### (Breach of Contract/Payment of Account—Genoa v. AMD)

56.     Plaintiffs repeat and incorporate by reference by reference the preceding allegations of this Complaint.

57.     In 2012, Genoa agreed to sell plastic Closures/Caps to AMD, specifically, white color HDPE closures at the price of $6.25 per 1000 pieces.

58.     Genoa performed the contract in a good and workmanlike manner by timely supplying to AMD the plastic Closures/Caps that AMD ordered from Genoa, as specified in Commercial Invoices 2012000028, 2012000033, 2012000042, 2012000044, 2012000046, 2012000048, and 2012000058.

59.     The products were delivered to AMD on or about March 12, 2012, March 19, 2012, March 29, 2012, April 2, 2012, April 3, 2012, May 4, 2012, and April 11, 2012.

60.     AMD has failed and refused to pay Genoa for the plastic Closures/Caps.

61.     After all payments made by AMD to Genoa are applied to outstanding invoices, the total amount owed by AMD to Genoa is $126,032.00, plus pre-judgment interest.

62.     Genoa is accordingly entitled to relief as set forth in the Prayer for Relief below.

## FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment—AMD)

63.     Plaintiffs repeat and incorporate by reference the preceding allegations of this Complaint.

64.     AMD has obtained the use and benefit of the services that were provided to it by Global Freight and the products that were sold to it by Genoa and Gama.

1169728.5

65.     If AMD is not required to pay the full amounts that are owed pursuant to the agreements as set forth in the First, Second, and Third Claims for relief above, AMD will be unjustly enriched at the expense of Plaintiffs.

66.     Plaintiffs are accordingly entitled to relief as set forth in the Prayer for Relief below.

**FIFTH CLAIM FOR RELIEF**
(Fraud—Paul Morrell)

67.     Plaintiffs repeat and incorporate by reference the preceding allegations of this Complaint.

68.     On several occasions in 2012, Mr. Morrell or his agents, acting on Mr. Morrell's behalf and under his direction, ordered services and products from Plaintiffs.

69.     Specifically, during the time period between January 1, 2012 and July 15, 2012, AMD requested Global Freight's transportation services under the Service Provider Agreement, which governs the terms of AMD's payment to Global Freight.

70.     Further, on or about March 12, 2012, AMD placed an order for 95 commercial deckboards (20 X 90 mm X 1m) and 36 commercial stringer notches (38 X 90 mm X 1.2 m) with Gama.

71.      Additionally, on or about January 31, 2012 and February 20, 2012, AMD placed orders for plastic Closures/Caps with Genoa.

72.     On each occasion when AMD placed an order, as described above, Mr. Morrell impliedly represented to Plaintiffs that he intended that AMD would pay for the services and products that were ordered.

10

73.     On information and belief, Mr. Morrell also impliedly represented to Plaintiffs that he intended that AMD would pay for the services and products that were ordered by AMD in 2011.

74.     When Mr. Morrell made the representations to Plaintiffs, he intended to induce them to fill orders by delivering products and providing services to AMD.

75.     Plaintiffs reasonably relied on Mr. Morrell's representations by filling the orders and delivering goods, and providing the requested services to AMD.

76.     Mr. Morrell's representation that he intended that AMD would pay for the services and products of Plaintiffs were false.  This fact is evidenced, among other things, by Mr. Morrell's statement that the assets and liabilities of AMD were transferred to Bright Pearl on January 1, 2012, rendering AMD unable to make payments for the services and products ordered in 2012.

77.     Plaintiffs have been damaged by Mr. Morrell's fraudulent representations in an amount to be proved at trial.

78.     Plaintiffs are accordingly entitled to relief as set forth in the Prayer for Relief below.

## SIXTH CLAIM FOR RELIEF
(Breach of Contract; Assumed Liability—Paul Morrell)

79.     Plaintiffs repeat and incorporate by reference the preceding allegations of this Complaint.

80.     As explained above, Plaintiffs entered into contracts to provide services and products to AMD.

11

81.     While he controlled AMD, Mr. Morrell caused AMD to dishonor, repudiate or otherwise breach its contracts with Plaintiffs.

82.     In his dealings with Plaintiffs on behalf of his company, AMD, Mr. Morrell acted in bad faith.

83.     Mr. Morrell's bad faith in connection with the performance of his contracts with Plaintiffs is evidenced, among other things, by the numerous orders for goods and services that he initiated after AMD's assets and liabilities had been transferred to Bright Pearl, an Iraqi company founded by Mr. Morrell.

84.     Mr. Morrell acted in bad faith by not informing Plaintiffs of the Bright Pearl Transfer until December 2012, and by accepting goods and services from Plaintiffs during 2012 without paying for them.

85.     Mr. Morrell acted in bad faith by not informing Plaintiffs that Mr. Morrell is affiliated with Bright Pearl and by representing Bright Pearl to be a company unrelated in management and ownership to AMD.

86.     Mr. Morrell committed fraud in connection with Plaintiffs' performance of their respective contracts with AMD, by falsely representing to Plaintiffs on several occasions in 2012 that AMD (a company which apparently was no longer operating in 2012 and had no assets and liabilities) would pay for the products and services ordered by Mr. Morrell, as explained above.

87.     Mr. Morrell is personally liable for AMD's breaches of the contracts with Plaintiffs, as set forth in the First, Second, and Third Claims for Relief above.

88.     Plaintiffs are accordingly entitled to relief as set forth in the Prayer for Relief below.

12

## SEVENTH CLAIM FOR RELIEF
### (Personal Liability for Fraudulent Transfer—Paul Morrell)

89.   Plaintiffs repeat and incorporate by reference the preceding allegations of this Complaint.

90.   Mr. Morrell exercised dominion and control over AMD's assets.

91.   On January 1, 2012, at a time when AMD was indebted to Plaintiffs, Mr. Morrell transferred or caused to be transferred all of AMD's assets and liabilities to Bright Pearl (the Bright Pearl Transfer).

92.   The Bright Pearl Transfer was made without receiving reasonably equivalent value in exchange therefore, at a time when AMD was engaged, or about to engage, in a business or transaction for which its remaining assets, if any, were unreasonably small, within the meaning of § 25-6-5(1)(b)(i) of the Utah Fraudulent Transfer Act (the "**UFTA**").

93.   The Bright Pearl Transfer was made without receiving reasonably equivalent value in exchange therefore, at a time when AMD intended to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due, within the meaning of §25-6-5(1)(b)(ii) of the UFTA.

94.   The Bright Pearl Transfer was made with the actual intent to hinder, delay, or defraud AMD's creditors, within the meaning of § 25-6-5(1)(a) of the UFTA.

95.   The Bright Pearl Transfer was made without receiving reasonably equivalent value in exchange therefore, at a time when AMD was insolvent; alternatively, AMD was rendered insolvent by the Bright Pearl Transfer, within the meaning of § 25-6-6(1) of the UFTA.

96.   Accordingly, the Bright Pearl Transfer was fraudulent under the UFTA.

97.   Mr. Morrell is personally liable for effectuating the Bright Pearl Transfer.

98.     Plaintiffs have been damaged in an amount to be proven at trial and in amount no less than what they are owed pursuant to the agreements as set forth in the First, Second, and Third Claims for relief above.

99.     Plaintiffs are accordingly entitled to relief as set forth in the Prayer for Relief below.

### EIGHTH CLAIM FOR RELIEF
(Civil Conspiracy—Paul Morrell)

100.    Plaintiffs repeat and incorporate by reference the preceding allegations of this Complaint.

101.    Bright Pearl was founded by Mr. Morrell and is operated by Mr. Morrell's brother, Phil Morrell.

102.    On information and belief, Mr. Morrell and Phil Morrell conspired to form Bright Pearl for the purpose of defrauding AMD's creditors, including Plaintiffs.

103.    On information and belief, Mr. Morrell and Phil Morrell mutually agreed to the plan to form Bright Pearl and effectuate the Bright Pearl Transfer.

104.    During the end of 2011 and the beginning of 2012, Mr. Morrell and/or Phil Morrell committed several unlawful and overt acts in furtherance of their conspiracy to defraud AMD's creditors including, but not limited to, causing the formation of Bright Pearl, effectuating the Bright Pearl Transfer, and making false representations to Plaintiffs in 2012 that AMD would pay for the products and services requested by AMD.

105.    As a result of the civil conspiracy accomplished by Mr. Morrell and Phil Morrell, Plaintiffs have been damaged in an amount to be proven at trial and in amount no less than what

1169728.5

they are owed pursuant to the agreements as set forth in the First, Second, and Third Claims for relief above.

106.    Plaintiffs are accordingly entitled to relief as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs Global Freight Systems Co. W.L.L.; Gama Center; and Genoa Plastic Industries pray for relief against defendants Al-Morrell Development, L.L.C.; Paul A. Morrell; and Bright Pearl for Water Purification and Filling Ltd., as follows:

1.      For judgment in favor of Global Freight and against all defendants, jointly and severally, in the amount of $248,675.00, plus pre-judgment interest at the rate of 10% per annum from the date of each invoice, and post-judgment interest at the rate of 10% per annum;

2.      For judgment in favor of Gama and against all defendants, jointly and severally, in the amount of $132,700.31, plus pre-judgment interest at the rate of 10% per annum from the date of each respective invoice, late charges in the amount of 1.5% per month after 30 days beginning from the due date for each invoice, and post-judgment interest at the rate of 10% per annum;

3.      For judgment in favor of Genoa and against all defendants, jointly and severally, in the amount of $126,032.00, plus pre-judgment interest at the rate of 10% per annum from the date of each invoices, and post-judgment interest at the rate of 10% per annum;

4.      For declaratory judgment that Mr. Morrell is liable for civil conspiracy;

5.      For damages suffered as a result of Mr. Morrell's tortious conduct, in an amount to be proved at trial;

1169728.5

6.      For an order requiring Mr. Morrell to cause the return to AMD such assets of Bright Pearl that are sufficient to satisfy any judgment in favor of Plaintiffs or any one of them;

7.      For punitive damages in an amount to be proved at trial; and

8.      For such other relief as the Court deems just and proper.

DATED this 20th day of October, 2014.

JONES WALDO HOLBROOK & McDONOUGH PC

By:  /s/ Jessica P. Wilde
      James S. Lowrie
      George W. Pratt
      Jessica P. Wilde
      *Attorneys for Plaintiffs*

Plaintiffs' Address:
c/o Richard Altman, P.C.
151 Broadway
Hawthorne, NY 10532

16

1169728.5