James S. Lowrie (USB #2007)
Jessica P. Wilde (USB #11801)
JONES WALDO HOLBROOK & McDONOUGH PC
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
Telephone: (801) 521-3200
*jlowrie@joneswaldo.com*
*jwilde@joneswaldo.com*

*Attorneys for Plaintiff Global Freight Systems Co. W.L.L.*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GLOBAL FREIGHT SYSTEMS CO. W.L.L.; GAMA CENTER; and GENOA PLASTIC INDUSTRIES,<br><br>Plaintiffs,<br><br>vs.<br><br>AL-MORRELL DEVELOPMENT, L.L.C. and PAUL A. MORRELL,<br><br>Defendants. | **PLAINTIFF GLOBAL FREIGHT SYSTEMS CO. W.L.L.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST AL-MORRELL DEVELOPMENT, L.L.C. AND SUPPORTING MEMORANDUM**<br><br>Case No. 1:14-cv-00133-TC<br><br>Honorable Tena Campbell |

Plaintiff Global Freight Systems Co. W.L.L. (Global Freight) hereby moves the Court, under Rule 56 of the Federal Rules of Civil Procedure and DUCiv-R 56-1, for partial summary judgment that the undisputed facts demonstrate that defendant Al-Morrell Development, L.L.C. (AMD) has breached its contract with Global Freight and is liable to Global Freight in the amount of $248,675, plus attorneys' fees and costs.

1192204.3

## INTRODUCTION

Global Freight's motion against AMD is simple. The parties entered into an agreement by which Global Freight would provide transportation services for AMD in Kuwait and Iraq, so that AMD could fulfill its contract with the U.S. government to provide water to the U.S. military during the recent Iraq war. While AMD benefitted by Global Freight's services, and was paid by the U.S. government for its services, AMD refused to pay Global Freight for the services requested by and provided to AMD under their agreement. AMD's refusal to pay Global Freight has required Global Freight to incur fees and costs by filing this lawsuit here in Utah. Global Freight asks the Court to award judgment for the amount owed by AMD as well as its attorney fees and costs.

## STATEMENT OF ELEMENTS, LEGAL AUTHORITY, AND UNDISPUTED MATERIAL FACTS

Pursuant to DUCivR 56-1(b)(2), Global Freight submits the following statement of elements and undisputed material facts.

1. <u>Element</u>: A contract was entered into when AMD and Global Freight signed the Service Provider Agreement (the Agreement). *Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 14, 20 P.3d 388 (listing the elements for breach of contract); *MEMdata, LLC v. Intermountain Healthcare, Inc.*, 2010 WL 5136105, *1 (D. Utah Dec. 2, 2010) (citing *Bair*, 2001 UT 20, ¶ 14).

AMD does not dispute the existence of the subject Agreement. *See* Complaint [Dkt. 2], ¶ 38 (alleging the Agreement was entered into); Answer [Dkt. 10], ¶ 38 ("AMD states the allegations in paragraph 38 of the Complaint refer to a written document that speaks for itself."). *See also* Declaration of Anthony Dsouza (Dsouza Decl.), ¶ 7; Dsouza Decl., Exhibit A.

2. <u>Element</u>: Global Freight performed under the Agreement by providing transportation services, at AMD's request, pursuant to the rules and guidelines set forth in the Agreement. *Bair*, 2001 UT 20, ¶ 14; *MEMdata,* 2010 WL 5136105, *1 (citing *Bair*, 2001 UT 20, ¶ 14).

AMD disputes that Global Freight performed under the Agreement. *See* Complaint, ¶ 41 ("Global Freight performed its obligations under the Service Provider Agreement in a good and workmanlike manner by providing AMD with transportation services that satisfied the detailed transportation rules and guidelines set forth in the Service Provider Agreement."); Answer, ¶ 41 (allegation denied). Yet, AMD has not produced any document in its initial disclosures that would show that performance wasn't rendered. Moreover, the email correspondence between Global Freight and AMD does not reflect any statement whatsoever that Global Freight did not perform under the Agreement. Dsouza Decl., ¶ 11. As set forth in Mr. Dsouza's declaration, Global Freight performed all of its obligations under the Agreement and followed the detailed set of performance guidelines set forth therein. *Id.* at ¶¶ 9-11.

3. <u>Element</u>: AMD breached the Agreement by failing to pay amounts owed for the transportation services that were provided. *Bair*, 2001 UT 20, ¶ 14; *MEMdata,* 2010 WL 5136105, *1 (citing *Bair*, 2001 UT 20, ¶ 14).

In its Complaint, Global Freight alleged that AMD has failed and refused payment in the principal amount of $248,675; AMD denied these allegations. Complaint, ¶¶ 44-45; Answer, ¶¶ 44-45. As set forth in Mr. Dsouza's declaration, AMD failed to pay for transportation services rendered beginning October 2011 and through July 15, 2012. Dsouza Decl., ¶¶ 12-13.

1192204.3

4.      Element: As a result of AMD's breach of the Agreement, Global Freight has been damaged in the principal amount of $248,675. *Bair*, 2001 UT 20, ¶ 14; *MEMdata*, 2010 WL 5136105, *1 (citing *Bair*, 2001 UT 20, ¶ 14).

Copies of the invoices and ledger showing the total amount owed are attached to the Dsouza Decl. as Exhibits B and C. *See* Dsouza Decl., ¶ 14 (the total principal amount owed is $248,675).

5.      Element: Upon prevailing on its breach of contract claim, Global Freight will be entitled to recover its attorneys' fees and costs. Under Kuwait law: "The Court, upon the pronouncement of the judgment terminating the litigation therefore, must decide of its own accord the expenses of the case, which shall be – including legal practice – decided against the adjudicated litigant in the case." Kuwait Civil Laws, Art. § 119 (Expenses of the Case) (attached as Exhibit 1).[1]

Global Freight's attorney fees, through roughly the end of May 2015, are approximately $40,000. Dsouza Decl., ¶ 16.[2]

## ARGUMENT

### I.   GLOBAL FREIGHT IS ENTITLED TO JUDGMENT IN THE PRINCIPAL AMOUNT OF $248,675.

Global Freight provided transportation services to AMD, a Utah company that was awarded a contract by the U.S. government, to provide water to the U.S. military and civilians during the recent Iraq war. Under their Agreement entered into on or about July 15, 2011,

---

[1] An explanation concerning the application of Kuwait law is set forth in Part II below and footnote 2.

[2] The attorney fees set forth in Mr. Dsouza's declaration are an estimate to provide perspective of the amount for the Court. Upon entry of judgment, a formal proceeding, followed by the filing of a declaration in support of a fee award, will be appropriate.

1192204.3

Global Freight was required to provide transportation services under specific rules and guidelines to AMD for a period of one year. At AMD's request, Global Freight carried out and completed all of the transportation services that it was contracted and requested to perform. Invoices were sent to AMD and AMD defaulted under the Agreement by failing to make payment in the amount of $248,675. These invoices are attached to the Dsouza Decl. that is filed herewith. After making several demands for payment, Global Freight determined it was necessary to pursue this action and seek judgment for the amount owed.

Judgment should be entered in favor of Global Freight and against AMD in the principal amount of $248,675.

## II.   GLOBAL FREIGHT IS ENTITLED TO JUDGMENT THAT IT MAY RECOVER ITS ATTORNEY FEES AND COSTS.

The Agreement governing the rights and obligations between Global Freight and AMD was entered into in Kuwait, where the law provides that prevailing parties are entitled to recover their attorney fees. If Global Freight prevails on its contract claim against AMD, Global Freight is entitled to award of its attorney fees.

### A. Utah choice-of-law rules apply.

This case is a diversity case.[3] A federal court sitting in diversity applies the choice-of-law rules in the state in which it sits. *Snyder v. Celsius Energy Co.*, 866 F. Supp. 1349, 1352 (D.

---

[3] Global Freight is a citizen of Kuwait and the defendants are Utah citizens. *See* Answer [Dkt. 100], ¶¶ 4-5 (defendants admit they are Utah citizens); Dsouza Decl., ¶ 1 (Global Freight is a limited liability company organized to do business in Kuwait).

1192204.3

Utah 1994) (citing *Klaxon Co. v. Stentor Mgf. Co.*, 313 U.S. 487, 496 (1941)).[4] Accordingly, Utah choice-of-law rules apply.

### B. Under the "most significant relationship" approach, Kuwait law governs.

Utah courts apply the "most significant relationship" approach when determining which state's laws should apply. *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 14, 54 P.3d 1054; *Am. Nat'l Fire Ins. Co. v. Farmers Ins. Exch.*, 917 P.2d 186, 190 (Utah 1996). In *Records v. Briggs*, 887 P.2d 864, 867 (Utah Ct. App. 1994), the Utah Court of Appeals held that the significant relationship test applies to tort, contract, and property interests.

Relying on the Restatement (Second) of Conflict of Laws, the Court set forth the following facts that should be evaluated in deciding which state's laws apply to a contract claim:

---

[4] "The initial step in resolving the choice of law question is to determine whether a conflict exists between the law of the interested states." *Snyder*, 866 F. Supp. at 1353. *See also Metro Aviation, Inc. v. United States*, 2012 WL 2914521, *1 (D. Utah July 16, 2012) ("When faced with a choice of law question, Utah courts first consider whether the laws of another jurisdiction and local law would reach a different result."). Kuwait law recognizes the enforcement of contracts, like Utah, and therefore, Global Freight has not performed a conflicts-of-law-analysis for the purpose of determining the governing law for its breach of contract claim against AMD. For example, there are numerous laws about the formation, validity, and enforcement of contract. *See, e.g.,* Kuwait Commercial Law, Art. § 39 (Offer) ("The offer that includes the intention of its offeror to conclude the contract, upon the consent of the offeree, shall be considered as offer, and must include, at least, the nature and essential stipulations of the contract desired to be concluded."); *Id.* Art. § 47 ("Should the offer be correlated with acceptance, the contract shall be binding to both parties thereof, and neither of them may regress even before they separate, unless otherwise agreed upon or otherwise decided by law or by custom."); *Id.* § 209 ("In contracts binding to both sides, if either of the contracting parties has not fulfilled his obligation when it falls due, after being notified, the other contracting party . . . may apply to the Judge to dissolve it along with the indemnity if required . . . ."). Copies of these laws are attached as Exhibit 2.

The issue of recovery of attorneys' fees, however, warrants a conflict-of-law-analysis because the law differs on the issue. Utah follows the American rule that absent an agreement governing fees or a statute, parties cover their own fees and costs. *See, e.g., Collier v. Heinz*, 827 P.2d 982, 983 (Utah Ct. App. 1992). Kuwait's law allowing the prevailing party to recover fees, set forth in Article 119 of Kuwait's Civil Laws, is consistent with the English rule that a prevailing party may recover attorney fees from the losing party. In fact, it is likely that the reason that the Agreement did not contain a provision authorizing the prevailing party to recover fees is because Kuwait law recognizes the recovery of fees and expenses under Article 119.

"'(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of business of the parties.'" *Id.* at 869 (citing Restatement (Second) of Conflict of Laws § 188(2) (1971)).

Applying the foregoing factors, the Agreement was negotiated in Kuwait, the Agreement was signed in Kuwait, and Global Freight carried out the services in Kuwait and Iraq as provided for in the Agreement. Furthermore, AMD was carrying out its business of operating water-bottling plants in Kuwait and distributing water to the U.S. military and commercial market in Iraq. The Agreement specifically provides:

> SCOPE OF WORK:
>
> 1. Global Freight Systems CO. W.L.L. Kuwait, a corporation organized and existing under the laws of Kuwait and located at Sultan Ben Essa Complex, Dajeej, Kuwait will provide transportation assets and services to support Al-Morrell Development, a Limited Liability Company (LLC) organized and existing under the laws of the State of Utah, U.S.A. in business to build and operate water-bottling plants for both the U.S. Military and commercial market with Iraq, with an office currently in Kuwait, located in Apt: 1, Block: 10, Building: 220, Street: 6, Jabriya, Kuwait.
>
> CONTRACT LOCATIONS: Kuwait and Iraq

Agreement, 1 (attached to the Dsouza Decl.).

Based on the foregoing, Kuwait law governs whether Global Freight is entitled to recover its attorney fees and costs for breach of the parties' Agreement.

### C. Kuwait law provides that a prevailing party is entitled to recover attorney fees.

Article 119 of the Kuwait Civil Law provides that a court shall determine the attorney's fees upon the request of the party that prevails:

> The Court, upon the pronouncement of the judgment terminating the litigation therefore, must decide of its own accord the expenses of the case, which shall be – including legal practice – decided against the adjudicated litigant in the case.
>
> . . .
>
> The court shall estimate the attorney's fees upon the request of the person ruled for his benefit, within the limits of his claims, in the light of the actual fees that he bore, and in consideration with the case's merits and the judiciary degree viewed before.

*See* Exhibit 1.

In the Declaration of Hassan Essa, Mr. Essa, a Kuwait attorney who speaks Arabic and English, confirms the accuracy of the translation of Article 119 from Arabic to English. Further, in his declaration, he states that under Article 119, a prevailing party in an action to enforce a contract is entitled to recover its attorney fees. *See* Declaration of Hassan Essa, ¶¶ 4-6.

In conclusion, Global Freight is entitled to judgment that it is entitled to recover its attorney fees and costs from AMD in pursuing its breach of contract action against AMD. If Global Freight prevails on its motion, it will file with the Court a declaration regarding attorney fees. As of May 27, 2015, the attorney fees and costs incurred by Global Freight are approximately $40,000. Dsouza Decl., ¶ 16.

## CONCLUSION

For the reasons set forth above, the Court should grant Global Freight's motion and enter judgment against AMD.

DATED this 2nd day of June, 2015.

            /s/ *Jessica P. Wilde*
            James S. Lowrie
            Jessica P. Wilde
            Counsel for Plaintiff Global Freight Systems Co. W.L.L.

## ELECTRONIC CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of June, 2015, I caused the foregoing **PLAINTIFF GLOBAL FREIGHT SYSTEMS CO. W.L.L.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST AL-MORRELL DEVELOPMENT, L.L.C. AND SUPPORTING MEMORANDUM** to be served, via electronic filing, on the following:

> Gary Anderson
> Christian Hansen
> 595 South Riverwoods Parkway, Suite 100
> Logan, Utah 84321
> gary@hao-law.com
> christian@hao-law.com

/s/ Jessica P. Wilde

1192204.3

# Exhibit 1

# Chapter Two
# Expenses Of The Case

Article -119-

The Court, upon the pronouncement of the judgment terminating the litigation therebefore, must decide of its own accord the expenses of the case, which shall be - including legal practice - decided against the adjudicated litigant in the case. If the adjudicated persons are numerous, it shall decide the division of the expenses among them in proportion to the interest of each in the case as estimated by the Court. They shall not be jointly obligated in the expenses unless they are joint in their original adjudicated obligation.

Intervention expenses shall be decided against the intervening person, should he have separate claims and his intervention is not accepted or his claims are rejected.

Article -119- Bis

The court shall estimate the attorney's fees upon the request of the person ruled for his benefit, within the limits of his claims, in the light of the actual fees that he bore, and in consideration with the case's merits and the judiciary degree viewed before.

**Salah Al-Jasim Computer Systems +965 246 7712   +965 240 2093  Fax +965 246 7713**

# Exhibit 2

# OFFER:

ARTICLE -39-

The offer that includes the intention of its offeror to conclude the contract, upon the consent of the offeree, shall be considered as offer, and must include, at least, the nature and essential stipulations of the contract desired to be concluded.

Salah Al-Jasim Computer Systems +965 246 7712   +965 240 2093  Fax +965 246 7713

ARTICLE -47-

Should the offer be correlated with acceptance, the contract shall be binding to both parties thereof , and neither of them may regress even before they separate, unless otherwise agreed upon or otherwise decided by law or by custom.

**Salah Al-Jasim Computer Systems +965 246 7712   +965 240 2093  Fax +965 246 7713**

# BRANCH THREE - DISSOLUTION OF CONTRACT
# FIRST - REVOCATION OF CONTRACT

ARTICLE -209-

1- In contracts binding to both sides, if either of the contracting parties has not fulfilled his obligation when it falls due, after being notified, the other contracting party, if he does not prefer to adhere to the contract, may apply to the Judge to dissolve it along with the indemnity if required, unless the applicant of dissolution defaulted, in his turn, in fulfillment of his obligations.

2- The Judge, upon the application of dissolution, may respite the debtor to a determined term, if required by the circumstances, and may also reject dissolution if the unfulfilled amount is slight in proportion to his obligations as a whole.

Salah Al-Jasim Computer Systems +965 246 7712   +965 240 2093  Fax +965 246 7713